IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COMMUNICATION MANAGEMENT                3:12-cv-01923-BR
SERVICES, LLC, et al.,

       Plaintiff,                          OPINION AND ORDER

v.

BROOKS L. HARLOW, Attorney at
Law,

       Defendants.


**FRANKLIN G. PATRICK**
P.O. Box 231119
Portland, OR 97281
(503) 245-2828

       Attorney for Plaintiffs

**JEFFREY M. PETERSON**
**STEVEN K. BLACKHURST**
Ater Wynne, LLP
1331 N.W. Lovejoy Street
Suite 900
Portland, OR 97209-2785
(503) 226-8635

       Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Brooks L. Harlow's Request (#48) for Judicial Notice and Motion (#45) for Summary Judgment.

For the reasons that follow, the Court **GRANTS** Defendant's Request (#48) for Judicial Notice and **DENIES** Defendant's Motion (#45) for Summary Judgment.


## BACKGROUND

The following facts are undisputed and taken from the parties' submissions on summary judgment.

**I.    Underlying Litigation Background**

In 1996 Congress passed the Telecommunications Act of 1996 (TCA), which amended the Federal Communications Act of 1934 and substantially modified the regulatory scheme governing the payphone industry and directed the Federal Communications Commission (FCC) to issue regulations implementing the provisions of this new law.  Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 United States Code).  The FCC adopted regulations that required carriers such as Qwest to set payphone service rates that were based on the actual cost of providing the service together with a reasonable amount for overhead.

Northwest Public Communications Council (NPCC) is a regional

trade association representing companies providing public
payphone services in Idaho, Montana, Oregon, and Washington.
Plaintiffs are Payphone Service Providers (PSPs) and are current
or former members of NPCC who purchased network payphone services
from Qwest Communications Corporation.  Those services included
Public Access Line services (PAL) and fraud-protection services
(CustomNet).

In December 1995 the Oregon Public Utilities Commission

Defendant is an attorney and former partner of the Miller
Nash law firm who represented NPCC when he was at Miller Nash.
Defendant also represented individual members of NPCC in various
matters, including litigation against Qwest in the Western
District of Washington.  See *Davel Commc'ns, Inc. v. Qwest Corp.,*
460 F.3d 1075 (9th Cir. 2006).

In December 1995 the Oregon Public Utilities Commission
(PUC) opened a general rate case (the Rate Case) to establish new
rates for all of Qwest's Oregon telecommunications services,
including its payphone services.

Three months after the commencement of the Rate Case,
Congress enacted the TCA pursuant to which payphone owners were
to be compensated for all calls made from their payphones,
including calls using 800 numbers, credit cards, and other
mechanisms that permitted calls without depositing coins into the
payphones.  Under the TCA intrastate payphone rates were subject
to federal regulations for the first time, and the TCA required

3 - OPINION AND ORDER

such rates to be compliant with the "new services test" (NST).
Thus, the enactment of the TCA fundamentally changed the
regulation of payphones during the pendency of the Rate Case.

In May 2001 NPCC (represented by Defendant) filed a
complaint with the PUC seeking refunds of PAL rates that
allegedly were in excess of those permitted by the TCA and
certain FCC orders (the Refund Case).  Although the Refund Case
was filed separately from the Rate Case, it would be affected by
the outcome of the Rate Case.  Thus, the PUC immediately stayed
the Refund Case in accordance with an agreement between the
parties.

In September 2001 the PUC concluded the Rate Case and set
rates that it believed were compliant with the 1996 amendments to
the FCA.

In March 2002 Defendant represented NPCC in an appeal of the
PUC's final determination in the Rate Case.

In 2003 Qwest implemented lower rates for the PAL and
CustomNet services that it provided to PSPs.

In 2004 the Oregon Court of Appeals ruled in favor of NPCC
and rejected the PUC's rate order as to payphone services,
remanded the administrative proceeding to the PUC, and directed
the PUC to reconsider the proposed rates in light of recent FCC
orders.

In 2005 while the Rate Case was pending on remand, the

4 - OPINION AND ORDER

administrative law judge assigned to the Refund Case abated that action in light of pending additional guidance from the FCC about the application of one of the FCC's orders.

In 2007 the PUC adopted a stipulation between Qwest and NPCC that the lower rates adopted by Qwest in 2003 complied with the FCC's orders and regulations, which effectively ended the Rate Case.

In February 2009 the PUC reactivated the Refund Case at NPCC's request when it became evident that further guidance from the FCC was not forthcoming.  In part because NPCC in the original Refund Case complaint only pled claims for refunds of PAL rates, NPCC moved to amend its complaint to add claims related to CustomNet refunds.

In May 2009 the PUC denied NPCC's motion to amend to include claims for CustomNet refunds on the ground that the CustomNet claims did not relate back to the initial claim for PAL refunds and, therefore, those claims were barred by the statute of limitations.

On approximately July 22, 2009, NPCC and the individual PSPs hired Plaintiffs' current counsel, Frank Patrick, to replace Defendant.  Prior to assuming representation, Patrick told Plaintiffs that they needed to file a case in the FCC or the United States District Court to protect claims that were not before the PUC (*i.e.,* to obtain refunds) and that they had much

5 – OPINION AND ORDER

larger claims for damages against Qwest that Defendant had not asserted on their behalf.  Patrick also specifically informed Plaintiffs that he was concerned the PUC did not have jurisdiction over the Refund Case claims because he believed the FCC or United States District Court had exclusive jurisdiction over claims arising under the TCA.

After being retained by Plaintiffs, Patrick conducted a full review of the complex history of the litigation before the PUC. On completion of this review, Patrick informed Plaintiffs in October 2009 that:

1)  In addition to the refund claims, there were other claims for damages and a potential federal antitrust claim;

2)  A number of state-law claims existed that provided independent bases for recovery, including recovery of the unpled CustomNet overcharges;

3)  State-law damage claims exceeded the potential federal damage claims; and

4)  If the PUC did not have jurisdiction over the claims in the Refund Case, such claims must be filed before the FCC or the United States District Court no later than November 15, 2009, to avoid a two-year statute of limitations.  Patrick also told Plaintiffs that any applicable statute of limitations would be tolled under

equitable principles even if the statutory period had run.

Accordingly, on November 13, 2009, NPCC and Plaintiffs filed an action in this Court asserting federal and state-law claims against Qwest (the Federal Action). *See N.W. Pub. Commc'ns Council v. Qwest Corp.*, No. 3:09-cv-01351-BR.

Also in November 2009 Plaintiffs, represented by Patrick, again moved to amend their complaint before the PUC to add claims for CustomNet refunds, but the PUC denied their motion in February 2010. Plaintiffs appealed that ruling to the Oregon Court of Appeals, but the appellate court dismissed the interlocutory appeal on September 9, 2010, on the ground that the PUC ruling was not an appealable final order.

On October 25, 2010, this Court dismissed Plaintiffs' federal-law claims on statute of limitations grounds; declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims; and, accordingly, dismissed the Federal Action in its entirety. *See N.W. Pub. Commc'ns Council v. Qwest Corp.*, No. 3:09-cv-01351-BR (#66), 2010 WL 4260341 (D. Or. Oct. 25, 2010). Plaintiffs moved the Court to reconsider its dismissal of the Federal Action on November 22, 2010. On March 16, 2011, the Court issued an Order in which it adhered to its October 25, 2010 decision. The Ninth Circuit Court of Appeals affirmed the Court's decision.

Shortly after the Court issued its October 25, 2010, decision in the Federal Action, Patrick advised Plaintiffs to obtain malpractice counsel.  At this time Patrick advised Plaintiffs that Patrick was uncertain whether the malpractice claims had accrued yet because the damages under the state-law claims exceeded the potential damages in the dismissed federal-law claims.  Plaintiffs believed they could not afford malpractice counsel, however, so Patrick agreed to undertake a limited effort to attempt to reach a tolling agreement with Defendants.

The PUC issued a final order in the Refund Case in 2011, which Plaintiffs appealed to the Oregon Court of Appeals.  That appeal remains pending.

On January 13, 2014, Plaintiffs instituted an action against Qwest in Oregon state court (the State Action) in pursuit of the state-law claims over which this Court declined to exercise supplemental jurisdiction in the Federal Action.  Qwest removed the State Action to this Court on February 13, 2014, and the State Action is now pending before this Court.  *See Commc'ns Mgmt. Servs., LLC v. Qwest Corp.*, No. 3:14-cv-00249-BR.

## II.  Malpractice Action Background

On October 25, 2012, two years after the Court's Order dismissing the Federal Action, Plaintiffs filed this legal malpractice action against Defendant.  In their Third Amended

Complaint (TAC), Plaintiffs allege Defendant was negligent in connection with his representation of Plaintiffs "in many different matters concerning claims under Oregon law and the Federal Telecommunications Acts before the [PUC] and the [FCC] and the Courts of Washington and Oregon." TAC at ¶ 12. *See also* TAC ¶¶ 21-27.

Specifically, Plaintiffs allege:

(1)  Defendant failed to timely file all the Plaintiffs' claims under the TCA against the PUC and Qwest in appropriate fora and as a result all Plaintiffs' claims under the TCA were deemed time barred;

(2)  Defendant failed to assert any of Plaintiffs' claims under Oregon law in the Refund Case or to seek payment of refunds under Oregon law in the Rate Case once the final rates were established that were lower than the challenged rates. As a result, efforts to amend the complaint in the Refund Case were denied and some of Plaintiffs' Oregon law claims may be time barred if amendment is not allowed on appeal;

(3)  Defendant failed to adequately plead the claims of the Plaintiffs for recovery at the PUC in the Rate Case and the Refund Case [by failing] to assert refund claims under Oregon law [,]. . . other claims related to discriminatory access to Qwest's telecommunications network in violation of the TCA and Oregon law[,] and . . . claims in federal and/or state court that were outside the subject matter jurisdiction of the PUC;

(4)  Defendant failed to advise Plaintiffs about the appropriate laws on the statute of limitations of [their claims]; and

(5)  Defendant failed to advise Plaintiffs of the implications of Defendant's failed efforts.

TAC at ¶¶ 23-27.

9 - OPINION AND ORDER

On September 6, 2013, Plaintiffs filed a Motion (#35) to Stay this action until the State Action and Plaintiffs' pending appeal of the PUC order before the Oregon Court of Appeals are resolved.  By Order (#42) on October 30, 2013, this Court denied the Motion to Stay without prejudice for the purpose of permitting litigation of the statute-of-limitations issues and limited discovery relevant to those issues.

On March 28, 2014, Defendant filed his Motion (#45) for Summary Judgment and Request (#48) for Judicial Notice. Defendant's Motion and Request were fully briefed on May 27, 2014.

On July 25, 2014, the Court directed the parties to supplement their briefing to address more specifically the question whether, as Plaintiffs assert, their legal malpractice claims are not ripe, and, therefore, Defendant's Motion for Summary Judgment is premature.

After the parties' supplemental briefing (#55, #56) the Court heard oral argument on August 27, 2014, after which the Court permitted the parties to submit additional supplemental memoranda.

## DEFENDANT'S REQUEST (#48) FOR JUDICIAL NOTICE

Defendant requests the Court to take judicial notice pursuant to Federal Rule of Evidence 201(b) of a number of

10 - OPINION AND ORDER

documents filed in a number of actions before the PUC as well as this Court that are attached to the Declaration (#49) of Jeff M. Peterson in Support of Defendant's Motion for Summary Judgment and Request for Judicial Notice.  Plaintiffs do not object to Defendant's request.

Pursuant to Federal Rule of Evidence 201 a court may take judicial notice of a fact that is not subject to reasonable dispute because it:

> (1)  is generally known within the trial court's territorial jurisdiction; or
>
> (2)  can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The Court concludes the documents that are the subject of Defendant's Request meet the criteria of Rule 201 and, therefore, the Court **GRANTS** Defendant's Request (#48) for Judicial Notice.

## <u>DEFENDANT'S MOTION (#45) FOR SUMMARY JUDGMENT</u>

## I.  Standards

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, No. 09-36109, 2011 WL 723101, at *8 (9th Cir. Mar. 3, 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v.*

11 - OPINION AND ORDER

*Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id*. "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)(citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment."  *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20,

2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1987)).  *See also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).  The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.

## II.  Discussion

### A.  Jurisdiction

Although Defendant previously argued in his Response (#39) in Opposition to Plaintiffs' Motion to Stay that he believed the Court may not have jurisdiction over this matter, after having the benefit of discovery Defendant now concedes the Court has diversity jurisdiction over this legal malpractice matter pursuant to 28 U.S.C. § 1332.  Accordingly, the only remaining issue in Defendant's Motion for Summary Judgment is whether Plaintiff's legal malpractice claims are time-barred.

### B.  Legal Malpractice Statute of Limitations

To prevail on a claim for legal malpractice in Oregon a

13 - OPINION AND ORDER

plaintiff must prove:  (1) harm, (2) causation, and (3) tortious conduct. *Kaseberg v. Davis Wright Tremaine, LLP,* 351 Or. 270, 277 (2011).  "In the legal malpractice context . . . a plaintiff must show 'not only that the attorney was negligent, but also that the result would have been different except for the negligence.'" *Watson v. Meltzer*, 247 Or. App. 558, 565-66 (2011)(quoting *Harding v. Bell*, 265 Or. 202, 205 (1973)).

An action for legal malpractice in Oregon must be commenced within two years from the date the claim accrues.  Or. Rev. Stat. § 12.110(1).  *See also Stevens v. Bispham,* 316 Or. 221, 223 (1993).  Oregon courts employ the following discovery rule to determine when a claim for legal malpractice accrues:  "The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists." *Kaseberg*, 351 Or. at 278.  Thus, pursuant to this discovery rule a malpractice claim accrues when "the plaintiff is, in fact, harmed and knows, or in the exercise of reasonable care, should know that the damage suffered was caused by the defendant's tortious conduct." *Cairns v. Dole*, 195 Or. App. 742, 744-45 (2004)(quoting *Stevens*, 316 Or. at 227.

It is not necessary, however, that the plaintiff know of all possible harm because a claim accrues for statute-of-limitations

14 - OPINION AND ORDER

purposes "when the plaintiff is aware that he or she has suffered *some* harm as a result of the defendant's alleged negligence.  It is immaterial that the plaintiff may not have known the full extent of the damages." *Cairns*, 195 Or. App. at 751-52 (emphasis in original).  Nonetheless, "'[t]he threat of future harm, not yet realized, is not enough.'" *Davies v. United States Nat'l Bank of Oregon*, 274 Or. 663, 668 (1976)(quoting Prosser, *The Law of Torts* 143-44 (4th ed. 1971)).  "Application of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kaseberg*, 351 Or. at 278.

In their Third Amended Complaint Plaintiffs allege they have suffered economic damages, including attorneys' fees paid to Defendant, as follows:

> (1)  The loss of rights, remedies, and damages against Qwest to be determined by a jury, for lost refunds and interest accrued as provided under the TCA and Oregon Law;
>
> (2)  For the loss of profits and prospective business revenues from the premature termination of operations and accrued interest;
>
> (3)  For the loss of profits and prospective business revenues from the discriminatory denial of access to Qwest's telecommunications network in Oregon and accrued interest; and

            (4)   Attorney fees and costs paid by Plaintiffs to
                  Defendant, in an amount to be determined by a
                  jury.

TAC at ¶ 30.

     As noted, Plaintiffs filed this legal malpractice action on

October 25, 2012.  Thus, to be entitled to summary judgment on

the ground that Plaintiffs' claims are barred by the two-year

statute of limitations, Defendant must demonstrate as a matter of

undisputed fact and law that Plaintiffs' legal malpractice claim

accrued before October 25, 2010.

     Plaintiffs contend Defendant's statute-of-limitations

defense fails because Plaintiffs have not yet suffered harm.  In

particular, Plaintiffs assert their legal malpractice claims have

not yet accrued and will not accrue unless and until they lose

their state-law claims in the State Action, which, as noted, has

been removed to and remains pending in this Court.  Plaintiffs

also assert they will not know whether they have been harmed by

Defendant's alleged negligence until those state-law claims have

been finally adjudicated because the state-law claims provide

independent bases for recovery.

     Although Defendant does not dispute all of Plaintiffs'

substantive damages may be recovered through his state-law

claims, he nevertheless contends Plaintiffs knew they were

injured no later than October 2009 when Patrick informed them of
his view of Defendant's alleged negligence.   In particular,
Defendant argues Plaintiffs incurred economic harm in the form of
attorneys' fees when Plaintiffs paid those fees to Defendant
during the course of his representation of them and, in any
event, prior to July 2009 when Patrick replaced Defendant as
Plaintiffs' counsel.

The Court notes Plaintiffs' alleged harms are divisible into
two general categories which raise different time-limitation
issues:

(1)  The deprivation of the substantive relief they
should have received from the claims that Defendant allegedly
litigated improperly, the claims that Defendant failed to plead
before the PUC, and the business damages that accrued as a
consequence of Defendant's alleged negligence; and

(2)  The attorneys' fees that Plaintiffs paid to
Defendant during the time that Defendant allegedly negligently
represented Plaintiffs.

**1.   Substantive Relief**

For purposes of their malpractice claim, the Court
concludes on this record that Defendant has not established as a
matter of undisputed fact and law that Plaintiffs were harmed
before October 25, 2010, as to the substantive relief that they

17 - OPINION AND ORDER

have been seeking in the underlying litigation before the PUC, Oregon Court of Appeals, and this Court. Although Plaintiffs may have known Defendant acted negligently by the time Patrick shared with Plaintiffs the results of his review of the case in October 2009, Plaintiffs still have not suffered a harm caused by that negligence because Plaintiffs may still be able to recover those same refunds and damages via the state-law claims and from their pending appeal. In other words, when Patrick advised Plaintiffs of the alleged deficiencies in Defendant's representation in October 2009, Plaintiffs only were aware of the threat of *future* harm with respect to the substantive relief they sought because it had not been established in any proceeding that the claims were not timely and, based on Patrick's advice, they believed such relief might still be recoverable through the State Action or the Federal Action.[1]

On this record, therefore, the Court concludes Defendant has not established as a matter of undisputed fact that Plaintiffs' knowledge of Defendant's alleged legal errors was sufficient to trigger accrual of Plaintiffs' legal malpractice

---

[1] The Court does not make any finding as to whether it was reasonable for Plaintiffs to believe that their relief could be obtained through the various actions Patrick filed. Such a factual determination is inappropriate on summary judgment. *See Cairns*, 195 Or. App. at 745.

claim as to the substantive relief they seek more than two years
before they commenced this action.  *See Davies*, 274 Or. at 668.

### 2. Attorneys' Fees

As noted, Plaintiffs also seek to recover the
attorneys' fees that they paid to Defendant in the course of his
allegedly negligent representation.  Unlike the substantive
relief that Plaintiffs seek, at least some of the attorneys' fees
that Plaintiffs paid to Defendant do not appear to be recoverable
through any other means.  Nevertheless, attorneys' fees paid to
the defendant in a legal malpractice action are only recoverable
harm if the plaintiff establishes the fees would not have been
paid but for the defendant attorneys' negligence.  *Rowlett v.
Fagan*, 262 Or. App. 667, 697 (2014).

Although Defendant's alleged negligence here may be a
"but for" cause for some fees paid by Plaintiffs to Defendant
(such as fees paid to litigate the motion to amend before the
PUC), there is not any evidence in the summary-judgment record
that establishes the amount of fees that Plaintiffs paid to
Defendant nor that identifies the services for which those fees
were paid.  At a minimum, therefore, a genuine dispute of
material fact exists as to whether Defendant's negligence was the
cause of Plaintiffs incurring attorneys' fees and as to when
Plaintiffs became aware or should have become aware of this

19 – OPINION AND ORDER

particular form of alleged harm.

In summary, the Court concludes Defendant has failed to show as a matter of undisputed fact and law that Plaintiffs' legal malpractice claim accrued before October 25, 2010. Accordingly, the Court concludes summary judgment as to Defendant's statute-of-limitations defense is inappropriate.


<u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendant's Request (#48) for Judicial Notice and **DENIES** Defendant's Motion (#45) for Summary Judgment.

The Court also directs the parties to confer and to submit a Joint Status Report no later than **October 17, 2014**, to present their recommendations for case-management procedures and their proposed dates for the efficient resolution of this matter within a reasonable time.

IT IS SO ORDERED.

DATED this 23rd day of September, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

21 - OPINION AND ORDER